**COUNTY OF MAVERICK**

**v.**

**TEXAS ASSOCIATION OF COUNTIES WORKERS' COMPENSATION SELF-INSURANCE FUND and Nutmeg Insurance Company.**

No. 04–92–00322–CV.

Court of Appeals of Texas, San Antonio.

April 14, 1993.

Phil Watkins, Suzette S. Kinder, Watkins & Brock, P.C., San Antonio, for appellant.

Daniel C. Andrews, Carol A. Jenson, Jones, Kurth & Treat, P.C., San Antonio, Catherine Brown Fryer, Bickerstaff, Heath & Smiley, L.L.P., Austin, for appellee.

Before PEEPLES, BIERY and GARCIA, JJ.

## OPINION

BIERY, Justice.

Nutmeg Insurance Company (Nutmeg) issued a "surplus lines public entity liability policy" to the County of Maverick (County). On September 23, 1987, County terminated the employment of four individuals. These individuals had been injured on the job and had later filed workers' compensation claims. The former employees filed suit against County for wrongful discharge under the Texas Workers Compensation Act, TEX.REV.CIV.STAT.ANN. art. 8307c (Vernon Supp.Pamph.1993) (the Act). Although Nutmeg initially tendered a defense to County under a reservation of rights, it later withdrew from the defense. County also sought a defense from the Texas Association of Counties Workers' Compensation Self–Insurance Fund (the Fund) pursuant to an "Interlocal Participation Agreement" between County and the Fund. The Fund also refused to defend County. The case was tried to a jury, which found that Coun-

ty terminated each employee for filing a claim under the Act. The jury awarded the employees a total of $122,000 damages for lost wages and benefits in the past. The jury further found County had "acted willfully or maliciously in discharging" the employees and awarded $15,000 to each employee as exemplary damages. The trial court entered judgment incorporating the jury's findings and ordered reinstatement of the employees.

County then filed this action seeking a declaration by the court that Nutmeg and the Fund owed County duties of defense and indemnity. County sought recovery of the damages paid to the employees and the cost of its defense. The case was submitted to the trial court on stipulated facts, briefs and oral arguments of the parties. The trial court entered judgment that County take nothing and awarded Nutmeg and the Fund attorneys' fees of $22,000 and $25,000 respectively. County appeals under four points of error. We affirm.

In points one and two, County contends the trial court erroneously found that neither appellee owed County a duty to defend or indemnify with regard to the employees' suit. This argument necessarily involves a review of the language of two contracts—the Fund's Interlocal Participation Agreement and the Nutmeg policy. Regarding the contract between County and the Fund, County contends the terms of the Interlocal Participation Agreement require the Fund to defend County in the underlying wrongful discharge suit. To support this argument, County relies upon the adoption of article 8307c, the wrongful termination statute, in article 8309h, the workers' compensation statute for employees of political subdivisions and the language of the Interlocal Participation Agreement. The stipulated facts reveal the agreement between County and the Fund obligates the Fund to provide "statutory benefits prescribed by article 8309h of the Texas Workers' Compensation Act for employees of political subdivisions." Further, the agreement provides that "any suits brought by one of its employees, pursuant to article 8903h, shall be defended, in the name of the Coun-

ty, by counsel selected by [the Fund]." The Interlocal Participation Agreement additionally states that the Fund "agrees to handle any and all claims."

By express provision, article 8309h adopts article 8307c. TEX.REV.CIV.STAT. ANN. art. 8309h, § 3(c) (Vernon Supp. Pamph.1993). Article 8307c of the Act proscribes discrimination against employees who file claims for benefits under the Workers' Compensation Act. It provides:

> Section 1. No person may discharge or in any other manner discriminate against any employee because the employee has in good faith filed a claim, hired a lawyer to represent him in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Texas Workmen's Compensation Act, or has testified or is about to testify in any such proceeding.
>
> Section 2. A person who violates any provision of Section 1 of this Act shall be liable for reasonable damages suffered by an employee as a result of the violation, and an employee discharged in violation of the Act shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.
>
> Section 3. The district courts of the State of Texas shall have jurisdiction, for cause shown, to restrain violations of this Act.

TEX.REV.CIV.STAT.ANN. art. 8307c (Vernon Supp.Pamph.1993). According to County, "an ambiguity is created concerning the construction of statutory benefits under article 8309h." County also contends:

> By their own admission the Fund's Interlocal Participation Agreement does not reference liability for wrongful discharge. Instead, the agreement promises to pay any and all claims. Article 8307c is a right created by the Workers' Compensation Act which right was adopted by article 8309h. The express adoption of the wrongful termination statute in the workers' compensation statute for employees of political subdivisions creates coverage, a duty to pay,

defend and indemnify in favor of County of Maverick.

In response, the Fund argues no ambiguity is created through the inclusion of article 8307c into article 8309h. The Fund acknowledges it agreed to provide "the statutory benefits prescribed by article 8309h" in the Interlocal Participation Agreement. It does not agree, however, the Fund is required by statute or the terms of the agreement to pay damages resulting from wrongful discharge of employees. According to the Fund, because the statutory definition of "benefits" does not encompass payment of damages for wrongful discharge, no duty to defend arises in this case:

> "Benefit" means a benefit received based on a compensable injury. The term includes a medical benefit, an income benefit, and a death or burial benefit. TEX. REV.CIV.STAT.ANN. art. 8308–1.03(5) (Vernon Supp.Pamph.1993).

Addressing County's argument regarding article 8307c, the Fund agrees that article 8307c is both a prohibition against discrimination and a right given to employees to bring a cause of action against their employers for such discrimination. It does not agree, however, that its inclusion into article 8309h makes the Fund liable for damages arising from the wrongful discharge of employees. According to the Fund, the adoption of article 8307c:

> into the provisions of article 8309h is intended only to ensure that political subdivisions are held to the same standard as private employers and to preserve the rights of employees whose workers' compensation benefits are provided by a political subdivision outside of a traditional workers' compensation insurance arrangement.

Thus, the Fund argues, self-insured political subdivisions are required by article 8309h to provide statutory workers' compensation benefits, as defined by article 8308.1.03(5), and nothing more. According to the Fund, when read in conjunction with the language of the Interlocal Participation Agreement, its duty to defend is limited to

the payment of statutory workers' compensation benefits for work-related injuries:

> The Undersigned Fund Member does hereby agree that *any suits brought by one of its employees pursuant to the provisions of Article 8309h, V.A.T.S. shall be defended in the name of the county by the counsel selected by TAC.* Full cooperation shall be extended to supply any information needed or helpful in such defense. The prerogative to settle, defend, or appeal such suits shall rest solely with the Texas Association of Counties Workers' Compensation Board with the advice of the Commissioners' Court or other appropriate governing body, *in accordance with usual procedures in the insurance industry in the settlement of workers' compensation claims.*
>
> . . . .
>
> *[T]he Fund through TAC agrees to handle any and all claims,* after *notice of injury* has been given, to prepare all required Industrial Accident Board forms, and to prepare a defense. (emphasis added).

When, as in this nonjury trial, "findings of fact and conclusions of law are not requested or filed, the trial court's judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence." *Seaman v. Seaman,* 425 S.W.2d 339, 341 (Tex.1968). We must review this declaratory judgment action based upon this standard. *NRG Exploration, Inc. v. Rauch,* 671 S.W.2d 649, 652 (Tex.App.—Austin 1984, writ ref'd n.r.e.). Applying this standard, it is apparent the declaratory judgment in favor of the Fund finds support in the record. Viewed apart from the rest of the agreement, the language cited by County is expansive enough to obligate the Fund to represent County in any suit, including one for wrongful discharge. However, language in the remainder of the agreement may belie that interpretation and demonstrate the parties intended that this contract be limited to the payment of workers' compensation benefits for work-related injuries and not wrongful discharge.

In the Interlocal Participation Agreement, County agrees to abide by the By-laws of the Fund. Those By–Laws provide that the Board of Trustees of the Fund will establish the type of workers' compensation benefits to be provided, based upon workers' compensation insurance policies approved by the Texas State Board of Insurance. As an exhibit to the stipulated facts, the parties provided the trial judge with a copy of the Workers' Compensation and Employers' Liability Insurance Policy approved by the State Board of Insurance for use in Texas. The policy specifically excludes *"damages arising out of the discharge of, coercion of, or discrimination against any employee in violation of law."* (emphasis added).

The Interlocal Participation Agreement also provides that County will pay a contribution equal to the premium payable as a standard annual premium for a workers' compensation insurance policy. According to the record, the rates, payroll classifications and experience rating modifiers as established by the State Board of Insurance are those used by the Fund in determining the amount of contribution from each member, including County. Because the workers' compensation insurance policy adopted by the State Board of Insurance does not cover damages for wrongful discharge, it follows that none of the rates established by the Board are set to provide payment for such a risk. In other words, the contribution payments made by County for coverage to be provided by the Fund in accordance with the Interlocal Participation Agreement and By-laws would not cover the risk of liability for damages for wrongful discharge. Reading the duty to defend in conjunction with the Fund's obligations under the contract, and favoring an interpretation of the agreement that affords some consequence to each part of the instrument so that none of the provisions will be rendered meaningless, we hold the evidence supports the trial court's finding the Fund had no duty to defend the wrongful termination suit brought against County under the interlocal agreement.

As discussed above, County argues that the statutory inclusion of article 8307c in article 8309h creates an ambiguity as to whether the term "benefits" includes damages resulting from the wrongful discharge of employees. Further, if ambiguous, County contends the Interlocal Participation Agreement must be construed in its favor as a matter of law. If a written document is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court should construe the contract as a matter of law. *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518–19 (Tex.1980); *see also Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *R & P Enters.*, 596 S.W.2d at 518–19; *Coker*, 650 S.W.2d at 393–94. Mere disagreement over the meaning of a provision in the contract does not, however, make it ambiguous. *Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 727 (Tex.1981); *Praeger v. Wilson*, 721 S.W.2d 597, 600 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.). Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of circumstances present when the contract was entered. *Reilly*, 727 S.W.2d at 529; *Coker*, 650 S.W.2d at 394. When the contract contains an ambiguity, its interpretation becomes a question of fact based on the intention of the parties to it. *Coker*, 650 S.W.2d at 393–94.

The intention of the parties is to be ascertained to the extent possible from the language of the contract itself, construed in connection with the circumstances surrounding the execution of the contract. *Madeley*, 626 S.W.2d at 731; *Richard Gill Co. v. Jackson's Landing Owners' Ass'n*, 758 S.W.2d 921, 925 (Tex.App.—Corpus Christi 1988, writ denied). These surrounding circumstances include what the particular industry considered to be the norm or reasonable and prudent at the time. *KMI Continental Offshore Prod. Co. v. ACF Petroleum Co.*, 746 S.W.2d 238, 241 (Tex. App.—Houston [1st Dist.] 1987, writ denied). In addition, the conduct of the parties which indicates the construction they themselves placed on the contract may be considered in determining the parties' true intent with regard to an ambiguous provision. *Consolidated Eng'g Co. v. Southern Steel Co.*, 699 S.W.2d 188, 192–93 (Tex. 1985); *Richard Gill Co.*, 758 S.W.2d at 925.

Further, the court's primary concern in interpreting a contract is to ascertain and give effect to the objective intent of the parties as expressed by the ordinary and plain language of the instrument. *R & P Enters.*, 596 S.W.2d at 518–19; *Praeger*, 721 S.W.2d at 600. The entire instrument must be considered so that none of the provisions will be rendered meaningless. *R & P Enters.*, 596 S.W.2d at 519. An interpretation of the contract which renders a provision meaningless is unreasonable and, therefore, not preferred. *Westwind Exploration, Inc. v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 382 (Tex.1985); *Praeger*, 721 S.W.2d at 601. Similarly, if one party's interpretation would require the insertion of a qualifying phrase, that interpretation must be rejected as violating the rule of giving language its ordinary meaning. *Praeger*, 721 S.W.2d at 601; *Glenn v. Gidel*, 496 S.W.2d 692, 702 (Tex. Civ.App.—Amarillo 1973, no writ).

Reading the record as a whole, we find no error in the trial court's construction of the Interlocal Participation Agreement. Other than County's statutory interpretation argument, there is no evidence in the record which would indicate the Interlocal Participation Agreement covers wrongful discharge damages. On the contrary, as discussed above, there is language contained in the stipulated facts specifically excluding damages arising out of the discharge of, or discrimination against, an employee. This interpretation does not require the insertion of a qualifying phrase in violation of the rule of giving language its ordinary meaning. Further, the interpretation advanced by County would render this language meaningless and, therefore, violates the rule of giving effect to the entire

writing. If it had been the parties intent to expand the statutory definition of "benefits" as set forth in the Workers' Compensation Act, the clarification of the Fund's obligation regarding termination damages would not have been necessary. There is evidence, therefore, that the objective intent of the parties was to exclude those damages as "benefits."

In *Artco–Bell Corp. v. Liberty–Mutual Ins. Co.*, 649 S.W.2d 722, 723 (Tex.App.—Texarkana 1983, no writ), the issue before the court of appeals was whether Liberty Mutual Insurance Company was obligated under a policy affording coverage for workers' compensation benefits also to cover damages the employer must pay to an employee who was wrongfully discharged in violation of article 8307c. A $5,000.00 judgment had been rendered against Artco–Bell based upon a jury's finding the company had discharged an employee for filing a workers' compensation claim. Artco–Bell claimed that damages for wrongful discharge were a benefit required of the employer under the Workers' Compensation Act and, therefore, the benefit came within the coverage of the Liberty Mutual policy. *Id.* at 724. The court rejected the reasoning of Artco–Bell and held that damages for wrongful discharge under article 8307c of the Texas Workers' Compensation Act are not "benefits" under the Act:

> the act places liability on the association or carrier for "damages for personal injuries." Regardless of whether or not Article 8307c is considered a part of the Workers' Compensation Act, we think it is clear that *"compensation and other benefits" as contemplated by the act and the insurance policy involved here, mean compensation and medical care, or death benefits, resulting from accidental injuries to the body, and not damages which may be recovered in a separate suit for wrongful discharge.* Undoubtedly, employers can purchase insurance covering their liability in wrongful discharge cases, but we do not believe that a contract to pay all compensation and other benefits required under the worker's compensation law should be held to encompass the other liability un-

less the text or context of the policy plainly requires it.

*Id.*

Subsequently, the First Court of Appeals in Houston addressed the issue of whether attorney's fees incurred in defense of a suit for damages for wrongful discharge constituted workers' compensation benefits. In *Fidelity & Casualty Co. v. Gaedcke Equip. Co.*, 716 S.W.2d 542, 542–43 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.), the court had to determine whether an insurance contract obligating the insurer "to pay promptly when due all compensation and other benefits required of the insured by the Workers' Compensation Law" and to "defend any proceeding against the insured seeking such benefits and any suit against the insured alleging such injury and seeking damages on account thereof" required the insurer to pay attorneys fees incurred as a result of a wrongful termination suit brought pursuant to article 8307c. The court, following the reasoning and holding in *Artco–Bell*, determined Gaedcke Equipment Company could not recover attorneys fees expended in defense of a wrongful discharge suit brought pursuant to article 8307c because "the insurance contract did not plainly encompass liability in wrongful discharge cases." *Id.* at 543.

■■■ County argues these cases are not applicable because "an insurance contract is not involved and in light of the agreement language to pay any and all claims...." We do not find either argument persuasive. Insurance contracts are controlled by the rules of construction and interpretation applicable to contracts generally. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex.1987); *Yancey v. Floyd West & Co.*, 755 S.W.2d 914, 917 (Tex.App.—Fort Worth 1988, writ denied). Moreover, the Interlocal Participation Agreement, through the By–Laws, adopted the exclusionary language contained in the Workers' Compensation and Employers' Liability Insurance Policy. As noted above, the rules of construction do not permit us to isolate the phrase "any and all claims" from the remainder of the instrument,

thereby rendering the provision excluding "damages arising out of the discharge of, coercion of, or discrimination against any employee in violation of law" meaningless. *R & P Enters.*, 596 S.W.2d at 519.

As in *Artco-Bell* and *Gaedcke*, the contract for the provision of workers' compensation benefits in this case does not plainly encompass liability in wrongful discharge cases. No mention is made in the Interlocal Participation Agreement of liability for wrongful discharge. Rather, the record contains evidence to support the Fund's theory that:

> the entire agreement pertains to the manner in which premiums will be calculated and assessed, the institution of safety regulations for eliminating or minimizing hazards which could contribute to workers' compensation losses, and the treatment of workers' compensation claims after notice of injury by employees of County. The duty undertaken by the Fund is to provide workers' compensation benefits for injured employees of Maverick County and to provide the county with legal representation necessary for the prosecution of any litigation in connection with claims for benefits.

Accordingly, we hold the record contains support for the Fund's theory that the Interlocal Participation Agreement does not provide coverage for the wrongful discharge of employees. Point of error one is overruled.

In point two, County alleges Nutmeg had a duty to defend or indemnify County pursuant to its public policy liability insurance contract. In an argument similar to that made by the Fund, Nutmeg argues several exclusions apply to precluded coverage and any duty to defend or indemnify on its part. The policy provides:

> This insurance *does not apply* to:
> 12. Bodily injury, property damage, personal injury, advertising injury or errors or omissions injury sustained by any person and caused by *demotion, dismissal, failure to promote, or otherwise arising out of employment or prospective employment of any person insured.* (emphasis added).

At oral argument, County argued that exclusion no. 12 could not be considered because, although included in the stipulated facts, Nutmeg failed to allege its applicability by way of brief or oral argument in the trial court. We do not agree. At the hearing on this declaratory judgment action, counsel for County stated: "Your Honor, the parties have previously agreed to submit this on stipulated *facts* to the Court." (emphasis added). The trial judge was entitled to consider not only the briefs and arguments of the parties, but the documentation supplied to the court by way of stipulation. There is nothing in the stipulation which limits the trial court's consideration of arguments or interpretation of the stipulated facts. We hold there is evidence in the record, specifically exclusion no. 12, to support the declaratory judgment in favor of Nutmeg and overrule point two.

In points three and four, County contends the trial court erred in awarding attorneys' fees to the Fund and Nutmeg because neither was entitled to declaratory judgment relief. Further, County contends the trial court erred in denying its request for attorneys' fees. The award of attorney's fees is authorized under the Uniform Declaratory Judgment Act. TEX.CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). As a general rule, it is proper to make a fee award to a party who obtains a declaratory judgment. *Inn of the Hills, Ltd. v. Schulgen & Kaiser*, 723 S.W.2d 299, 302 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.). It is also proper to award fees to a party who successfully defends against a claim for declaratory relief. *Ritchie v. City of Fort Worth*, 730 S.W.2d 448, 451 (Tex.App.—Fort Worth 1987, writ ref'd n.r.e.). We hold the Fund and Nutmeg successfully defended the declaratory judgment action and prevailed in the judgment. Under Texas statutory and case law, the award was proper. The trial court also properly denied County's request for attorneys' fees because of its failure to prevail in its declaratory action. Points three and four are overruled.

Accordingly, the judgment of the trial court is affirmed.