**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 8, 2013

Lyle W. Cayce
Clerk

No. 12-20193
Summary Calendar

GERALD P. ZIECHE,

Plaintiff-Appellant,

v.

BURLINGTON RESOURCES INC. EMPLOYEE CHANGE IN CONTROL
SEVERANCE PLAN; CONOCOPHILLIPS; WACHOVIA BANK, N.A.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas
Case No. 4:07-CV-3985

Before SMITH, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Gerald Zieche sought severance benefits and a promised bonus after he resigned from his job. The benefits plan trustee, Defendant-Appellee Wachovia Bank, denied his severance claim; his employer, Defendant-Appellee ConocoPhillips, rejected his bonus claim. Zieche brought a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20193

breach of contract claim against ConocoPhillips, and a denial of benefits claim under the Employee Retirement Income Security Act ("ERISA") against Wachovia and the benefits plan. The district court granted summary judgment for ConocoPhillips, Wachovia, and the benefits plan. We AFFIRM.

1. Facts and Proceedings

Gerald Zieche was a longtime geologist for Burlington Resources, Inc. Zieche participated in a company benefits plan. The plan provided that, if another company purchased or merged with Burlington, and if the company terminated the beneficiary's employment within two years after the purchase or merger, a plan participant would receive severance benefits. The plan also provided that the participant would receive severance benefits if the participant quit for "good reason" in that time frame. The plan defined "good reason" to include "a reduction in the Participant's annual base salary," "a material reduction in benefits provided employees immediately prior to the Change in Control," or "a change in the Participant's position or responsibilities which represents a substantial reduction of the Participant's position or responsibilities immediately prior thereto."[1]

ConocoPhillips announced its intent to purchase Burlington in December 2005. The company completed the purchase on March 31, 2006. In the interim period between December 2005 and March 31, 2006, Zieche received a discretionary bonus of $63,000 for 2005, and a promotion that increased his base salary by eleven percent to about $185,000 for 2006.

ConocoPhillips sent Zieche multiple letters related to his compensation. The "Retention Bonus" letter explained that Zieche would receive a bonus of one

---

[1] The plan also provided that, after a merger, plan trustee Wachovia Bank "shall, without direction from the Company . . . make payments . . . in the Trustee's sole discretion, directly to the Plan Participants and beneficiaries in such manner and in such amounts as the Trustee shall determine they are entitled to be paid under the Plans."

year's salary—$185,000—if the merger occurred and Zieche worked at ConocoPhillips for one year. The letter contained an exception that allowed Zieche to resign for "Good Reason" within a year of the merger and still receive the bonus. Exhibit A to the letter defined "Good Reason" as:

> (i) the relocation of your place of employment by more than 50 miles, (ii) any reduction in your annual rate of base salary from your annual rate of base salary in effect on the date hereof, or (iii) any reduction in your target bonus opportunity percentage from your target bonus opportunity percentage in effect on the date hereof.

Zieche signed and returned the letter.

The "Continuation of Employment Letter" confirmed that Zieche would continue to work for ConocoPhillips after its purchase of Burlington. ConocoPhillips detailed in the letter Zieche's compensation and benefits while "reserv[ing] the right to amend or terminate plans at any time." Under the heading "**2006 Compensation**," ConocoPhillips indicated that, for 2006, he would receive the same salary, along with his full 2006 bonus. The bonus normally would be paid in February 2007, but ConocoPhillips explained that it would pay the "full and final" amount—forty percent of his salary, or almost $75,000—thirty days after the merger.[2] Under the heading "**Future Compensation Structure**," ConocoPhillips explained that it was the company's "intent to move all employees to [the company's] compensation structure as soon as practicable." ConocoPhillips continued that Zieche's salary would remain the same, and that his bonus would be twenty-five percent of his annual earnings, but that "[b]ased on performance," his payout could range from "0-250%" of the targeted bonus rate. Under the same "**Future Compensation Structure**" heading, ConocoPhillips noted that information about the bonus was "provided

---

[2] Zieche received a 2005 bonus that was thirty percent of his salary for the year in February 2006. One month after the merger, Zieche received a 2006 bonus that was forty percent of his salary for the year.

for informational purposes only," and that "[s]ince [Zieche's] 2006 equity and bonus awards have already been made or will be made shortly after the merger as set forth above, [Zieche] will not be participating in these ConocoPhillips programs until 2007." ConocoPhillips continued under the heading "**Benefits**" that, later in the year, Zieche would "receive comprehensive information on the 2007 compensation and benefits for which [Zieche] will be eligible."

The "Salary Over Range Maximum" letter explained:

> Your base salary exceeds the maximum of the salary range for your grade level. The salary range may be adjusted annually; however, while your salary exceeds the maximum of the range you will be ineligible for annual salary increases and your [bonus] targets will [be] capped at the maximum of the range. The Company intends that all employees will be within the salary range over time.

Zieche resigned from ConocoPhillips about five months after the merger. In a letter giving notice of his resignation to ConocoPhillips and Wachovia, Zieche wrote that he had a "good reason" for resigning pursuant to both the "Retention Bonus" agreement and the terms of the benefits plan. Zieche explained that ConocoPhillips reduced his compensation by freezing his salary, lowering his bonus rate, and decreasing other benefits, including the company's contribution to his 401(k). As a result, he argued, he was entitled to severance benefits and his full retention bonus.

ConocoPhillips rejected Zieche's retention bonus claim. The company explained that there was no reduction to the bonus rate because Zieche received his full 2006 bonus after the merger. The company added that the "Continuation of Employment Letter" "was clear that none of the parameters regarding Mr. Zieche's bonus would be changing in 2006," and that "[w]e cannot tell what might have happened after 2006."

Wachovia denied Zieche's severance benefits claim. Wachovia explained that there was no change to his salary or "material reduction in benefits." Wachovia added that, "[b]ased on the information provided by both parties, it

appears that Mr. Zieche had the same, or more, direct reports, the same, or more, geographic responsibility, an increased budget, increased signing authority and an increased salary."

Zieche filed suit in November 2007, alleging that ConocoPhillips breached its agreement to provide Zieche a retention bonus, and that Wachovia incorrectly denied Zieche's severance benefits claim under ERISA.[3] The district court granted summary judgment for ConocoPhillips, Wachovia, and the benefits plan in March 2011. The district court found that ConocoPhillips' refusal to pay the retention bonus did not breach its contract with Zieche because Zieche did not have a "good reason" to resign pursuant to the "Retention Bonus" agreement. The district court explained that Zieche did not have a "good reason" to resign because ConocoPhillips did not reduce Zieche's salary or bonus. The district court also found that Wachovia did not abuse its discretion by interpreting the benefits plan to deny Zieche severance benefits because Zieche did not have "good reason" to resign pursuant to the plan. The district court explained that there "was no material reduction in Zieche's position, responsibilities, or benefits, as of the date of Zieche's voluntary termination." The district court denied Zieche's motion for reconsideration for the same reasons. The order denying Zieche's motion for reconsideration also rejected Zieche's request for further discovery, finding that Zieche "did no more than advance vague assertions of unspecified facts." Zieche appeals the district court's ruling as to both the retention bonus and severance benefits.[4]

---

[3] Zieche also sought to hold ConocoPhillips liable for the denial of his benefits under ERISA, but the district court found that ConocoPhillips was not a proper defendant under 29 U.S.C. § 1132(a)(1)(B). The district court found that Wachovia, and not ConocoPhillips, administered the plan and made the final determination regarding Zieche's rights. Zieche waives this issue because he does not raise it on appeal. *See F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994) ("[I]f a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court.").

[4] Zieche also argues that the district court erred in denying his motion for a continuance to allow more time for discovery under Fed. R. Civ. P. 56(f) (since renumbered Rule 56(d)). To

No. 12-20193

## 2. Standard of Review

"This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007).

## 3. The Retention Bonus

"The essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App. 2005); *see also Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. Ct. App. 2001).[5] "A breach of contract occurs when a party fails or refuses to do something he has promised to do." *Capstone Healthcare Equip. Servs., Inc. ex rel. Health Sys. Grp., L.L.C. v. Quality Home Health Care, Inc.*, 295 S.W.3d 696, 699 (Tex. App. 2009); *see also Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App. 2006). A court's "primary concern in interpreting a contract is to ascertain and give effect to the objective intent of the parties as expressed by the

---

justify a continuance for more discovery, a party must "specifically explain both why it is currently unable to present evidence creating a genuine issue of material fact and how a continuance would enable the party to present such evidence." *Liquid Drill, Inc. v. U.S. Turnkey Exploration, Inc.*, 48 F.3d 927, 930 (5th Cir. 1995). In doing so, the party seeking the continuance may not "rely on vague assertions that discovery will produced needed, but unspecified, facts." *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 535 (5th Cir. 1999) (quoting *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990)). A district court has broad discretion to a deny a Rule 56(f) motion. *Id.* To the extent that Zieche argues that he needs more discovery to develop his conflict of interest allegation, his argument is moot because the existence of a conflict would not alter our analysis under ERISA. Zieche does not otherwise make specific assertions that more discovery will produce evidence that would create a genuine issue of material fact, and thus does not show that the district court abused its discretion in denying his continuance motion. *See id.*

[5] The "Retention Bonus" agreement was formed in Texas, and the parties do not dispute the district court's application of Texas state law to Zieche's breach of contract claims. Further, the district court properly exercised supplemental jurisdiction over the breach of contract claims pursuant to 28 U.S.C. § 1367.

6

ordinary and plain language of the instrument." *Cnty. of Maverick v. Tex. Ass'n of Counties Workers' Comp. Self-Ins. Fund*, 852 S.W.2d 700, 705 (Tex. App. 1993). "The entire instrument must be considered so that none of the provisions will be rendered meaningless." *Id.*; *see also Westwind Exploration, Inc. v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 382 (Tex. 1985).

Here, the district court correctly found that ConocoPhillips did not breach the retention bonus agreement because Zieche did not have a "good reason" to resign under the plain language of the agreement. The agreement defined "good reason" as "any reduction in [Zieche's] annual rate of base salary from [his] annual rate of base salary in effect on the date hereof" or "any reduction in [his] target bonus opportunity percentage from [his] target bonus opportunity percentage in effect on the date hereof." The parties do not dispute that Zieche's salary before the merger was $185,000 per year, or about $15,000 per month, and that Zieche received the same $15,000 sum in the months following the merger.[6] The parties also do not dispute that, one month after the merger, ConocoPhillips awarded Zieche a 2006 bonus of forty percent of his salary for the year, an increase of ten percent from the year before. The salary freeze was not a "reduction" because, as the district court found, interpreting "reduce" to mean "not increase" as opposed to its ordinary meaning—for example, "[t]o diminish in size, amount, extent, or number," *see Merriam-Webster's Collegiate Dictionary* 1044 (11th ed. 2003)—is "unnatural[ ]" and at odds with the term's plain meaning. It follows that a bonus rate *increase* is not a "reduction."

Zieche argues instead that he had a "good reason" to resign because ConocoPhillips "Continuation of Employment Letter" reduced his *future* salary

---

[6] Zieche testified at his deposition that his salary "was not reduced, but it was capped" after the merger. He added: "I was pretty confident my salary was going to remain the same for a very long time."

and bonus rate. To the extent that we consider the letter[7], a plain language reading of its terms shows that it too does not require a reduction of Zieche's salary or bonus rate. Zieche argues that the letter caps his annual earnings but, as discussed above, a salary freeze is not a "reduction." Even if we found Zieche's asserted interpretation of "reduction" plausible, the related "Salary Over Range Maximum" letter allowed for a pay increase by providing that Zieche's "salary range may be adjusted annually." Zieche also argues that the letter reduces his bonus rate to twenty-five percent of annual earnings. Although the letter does establish the twenty-five percent rate, it also allows for a "0-250%" variance from the rate. This variance allows ConocoPhillips to award Zieche a future bonus that matches or exceeds his 2006 rate.

Even if we assume that the twenty-five percent "target bonus opportunity percentage" for 2007 would amount to a reduction, we must consider the bonus language in the context of the letter. *See Cnty. of Maverick*, 852 S.W.2d at 705; *see also Westwind Exploration*, 696 S.W.2d at 382. ConocoPhillips prefaced the letter by warning that it "reserve[d] the right to amend or terminate plans at any time." Then, under the same "**Future Compensation Structure**" heading that detailed Zieche's bonus percentage, ConocoPhillips cautioned that the "information on [the bonus program] has been provided for informational purposes only," and that "[s]ince [Zieche's] 2006 equity and bonus awards have already been made or will be made shortly after the merger as set forth above, [Zieche] will not be participating in these ConocoPhillips programs until 2007." A plain reading of the bonus provision, in the context of this qualifying language, indicates that the twenty-five percent bonus rate for 2007 was uncertain, and subject to change.

---

[7] Neither party addressed whether the "Continuation of Employment Letter" was inadmissible as extrinsic evidence under the parol evidence rule. *See Ross v. Stinnett*, 540 S.W.2d 493, 495 (Tex. App. 1976).

No. 12-20193

In sum, ConocoPhillips did not breach its agreement to provide Zieche with a retention bonus because Zieche did not have a "good reason" for resigning from the company under the plain language of the agreement.

4. The Severance Benefits

A "denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "If the administrator has discretionary authority, a reviewing court applies an abuse of discretion standard."*Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 636 (5th Cir. 1992); *see also Bruch*, 489 U.S. at 115. "'In applying the abuse of discretion standard, we analyze whether the plan administrator acted arbitrarily or capriciously.'" *Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 601 (5th Cir. 1994) (quoting *Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1014 (5th Cir.1992)). An administrator does not abuse its discretion if there is "some concrete evidence in the administrative record that supports the denial of the claim." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 302 (5th Cir. 1999) (*en banc*).

Here, the plan gave Wachovia discretionary authority because it provided that, after a "Change of Control," "the Trustee shall, without direction from the Company . . . make payments . . . in the Trustee's sole discretion directly to the Plan Participants." As a result, we review Wachovia's interpretation of the plan for abuse of discretion. *See Bruch*, 489 U.S. at 115; *Wildbur*, 974 F.2d at 636.

Wachovia did not abuse its discretion in denying Zieche severance benefits because it did not act "arbitrarily or capriciously" in interpreting the plan to find that there was not "good reason" for Zieche to resign. *See Sweatman*, 39 F.3d at 601. Wachovia's finding that ConocoPhillips did not reduce his salary was not an abuse of discretion because, as discussed above, a salary freeze is not a

reduction. Wachovia's finding that Zieche did not demonstrate a "material reduction" in his bonus was not an abuse of discretion because, as discussed above, Zieche received an increased bonus after the merger, and any proposed bonus reduction was subject to change. Zieche's argument that ConocoPhillips materially reduced his other benefits is unpersuasive for the same reason: as Wachovia found, Zieche did not "demonstrate[ ] changes" in benefits, and any proposed reductions were uncertain at the time Zieche resigned. Further, Wachovia did not abuse its discretion by finding that Zieche "had the same, or more, direct reports, the same, or more, geographic responsibility, an increased budget, increased signing authority and an increased salary" because ConocoPhillips introduced "concrete evidence" into the administrative record, *see Vega,* 188 F.3d at 302, in the form of statements by Zieche's supervisor that Zieche's "role after the Change in Control was essentially the same as it was immediately prior the Change in Control." Wachovia's thorough explanation of its decision to deny benefits makes clear that it weighed and rejected Zieche's competing evidence. As a result, we cannot say that Wachovia's decision to deny benefits was arbitrary or capricious. *See Sweatman*, 39 F.3d at 601.

In sum, Wachovia did not abuse its discretion in interpreting the benefits plan to deny Zieche's severance benefits claim because Zieche did not have a "good reason" for resigning.

5. Conclusion

Accordingly, we AFFIRM the district court's grant of summary judgment.

10