The RICHARD GILL COMPANY and
Bayhouse, Ltd., Appellants,

v.

JACKSON'S LANDING OWNERS'
ASSOCIATION, Appellee.

No. 13–87–496–CV.

Court of Appeals of Texas,
Corpus Christi.

Sept. 22, 1988.

Rehearing Denied Oct. 20, 1988.

Paul T. Curl, Martin, Shannon & Drought, P.C., San Antonio, for appellants.

Savannah Robinson, Corpus Christi, for appellee.

Before KENNEDY, UTTER and DORSEY, JJ.

## OPINION

KENNEDY, Justice.

Jackson's Landing Owners' Association sued Bayhouse, Ltd., a Texas Limited Partnership, and one of the limited partners, The Richard Gill Company (TRGC), as the past managers and partial owners of a condominium project, for failure to pay properly assessed dues, and for negligent failure to keep the books of the condominium project in good order during the period of development. In a trial to the court, judgment was rendered for the Association for $14,484.09 in unpaid assessments, $7,063.74 as late fees on the assessments, $7,063.74 as pre-judgment interest on the assessments, $3,725.00 as actual damages for failure to keep the books in good order, $705.19 as prejudgment interest on actual damages, and $7,500.00 as attorney's fees. Appellants bring four points of error complaining that the trial court erred in holding Bayhouse liable for the assessments, in disregarding TRGC's status as a limited partner, and in awarding attorney's and accountant's fees to appellee.

Bayhouse, Ltd. is a limited partnership that was set up by Jack Turner, a Corpus Christi architect, and Corpus Christi Partners, Ltd., as general partners, and TRGC, as limited partner, for the purpose of converting the Bayshore Apartments into Jackson's Landing Condominium. In accordance with the Texas Condominium Act, Tex.Prop.Code Ann. § 81.102 (Vernon 1984), Bayhouse filed a declaration of condominium in Nueces County on December 30, 1981, along with a copy of the bylaws of the owner's association.

The declaration provided for Bayhouse to manage the condominium and perform the duties of the owners' association during the development period, which would continue until 75% of the units were sold or three years from the date of the declaration, whichever came first. At that time the

owners' association would be formed and would elect a board of directors to take over control of the condominium. On July 15, 1982, Bayhouse executed a management agreement under which TRGC took over the management of Jackson's Landing on behalf of Bayhouse. TRGC continued to manage Jackson's Landing until May 3, 1984, when the first owners' association meeting was held.

At the first meeting, officers of the association and a board of directors were promptly elected. The board asked TRGC to turn the books over to the association in order for the association to do an accounting as required by the declaration. The accounting firm of Fancher & Co. was hired by the association to do the audit. The records TRGC gave to the association and that were passed on to Fancher, however, were inauditable in the opinion of the accountant. He had to do a large amount of work on the materials received to put them in an order which would permit the association to continue business. From the records that the accountant pieced together, the association noticed that Bayhouse, and TRGC as manager, had failed to properly make monthly assessments against itself for the units within the condominium that it still owned during the development period. Instead, Bayhouse had pro-rated certain expenditures it made on behalf of the condominium, by paying for a portion of the expenses itself. The association brought suit against Bayhouse and TRGC for the difference between these pro-rated amounts and the amounts that Bayhouse properly should have assessed against itself under the terms of the declaration. Bayhouse also brought suit for the accounting fees necessary to put the books in order, and for reasonable attorney's fees.

■ Appellants' first point of error is multifarious. It attacks the trial court's award of assessments to appellee on the grounds that offsets to the award were proved as a matter of law or by the great weight and preponderance of the evidence, that Bayhouse had no obligation to pay assessments, and that most of the assessments are barred by the statute of limitations. Nevertheless, since appellants separately briefed each complaint within their first point, we will address each separately.

The first complaint we address is appellants' contention that as a matter of law Bayhouse had no obligation, as developer, to pay assessments. Appellants claim that the declaration and bylaws which established the relationship between Bayshore and the future apartment owners in Jackson's Landing did not obligate Bayshore to pay assessments on the number of apartments that it owned during the development period.

The duty of apartment owners to pay assessments is set out in the declaration as follows: "§ 21.1.1 Commencing with the effective date of this Declaration each apartment owner shall be liable for a proportionate share of the common expenses...." The Texas Condominium Act also provides in § 81.204(a) that "[a]n apartment owner in a condominium regime is responsible for the apartment owner's pro rata share of: (1) the expenses to administer the condominium regime and to maintain and repair the general common elements...." The question on appeal is whether the trial court correctly interpreted the declaration to include Bayhouse as an "apartment owner" subject to assessments during the development period.

The relevant portions of the declaration suggesting that Bayhouse is an apartment owner are:

§ 1.8 Declarant [Bayhouse] is the sole owner of the Property.

§ 9.1 The persons or entities, including the Declarant, who are, at the time of reference, the apartment owners shall constitute the Home Owners Association....

Bayhouse was the legal owner of the property consisting of unsold apartments within the condominium during the period of development. Section 9.1, moreover, clearly includes Bayhouse in the group that it refers to as "apartment owners."

Appellants contend, however, that other terms of the declaration providing that Bayhouse itself had the power to make and collect assessments, to advertise the development by posting signs on the property, and to perform routine maintenance on the common areas, all of which are not allowed for individual apartment owners, suggest that Bayhouse as developer was not intended to be an "apartment owner" under the declaration.

Appellee, however, points out that it is not inconsistent for Bayhouse to be considered an apartment owner and at the same time exercise powers specifically denied to individual owners in the declaration. The board of directors itself, though merely a group of individual owners, would eventually gain these same powers. The distinction is that Bayhouse was not acting in its capacity as an owner of individual apartments when it undertook maintenance or advertising, but in its capacity as an interim manager. This did not detract from Bayhouse's status under either capacity, nor does it make the declaration ambiguous. The trial court correctly concluded that Bayhouse was an apartment owner under the declaration for the purpose of assessments.

■ The second complaint we address is appellants' contention that most of the assessments claimed by appellee are barred by the four year statute of limitations for collection of a debt under Tex.Civ.Prac. & Rem.Code Ann. § 16.004(a)(3) (Vernon 1986). Under the declaration, Bayhouse should have been making monthly assessments against itself from January 1, 1982, until the last unit was sold on March 7, 1984. Appellee filed "Plaintiff's First Amended Original Petition" on February 3, 1986, against Gill Savings Association, later dropped from the suit, TRGC and "Bayshore, Ltd.," a separate partnership then in existence but not involved in the present transaction. On March 5, 1986, appellee filed "Plaintiff's Second Amended Original Petition" against . Gill, TRGC and "Bayhouse, Ltd." Appellants complain that for assessments due before March 5, 1982, the statute of limitations had run before Bayhouse was properly made a party to the present action. Appellee contends that, since the trial court found that Bayhouse's failure to maintain auditable records constituted fraud against appellee, the statute of limitations was tolled until appellee reasonably should have become aware of the failure to assess, when it first assumed management responsibility and took the books from Bayhouse in the summer of 1984.

The law is clear that fraud prevents the running of the statute of limitations until it is discovered, or by the exercise of reasonable diligence it should have been discovered. *Andress v. Condos,* 672 S.W.2d 627, 630 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); *Bush v. Stone,* 500 S.W.2d 885, 889 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.). In addition, when there is a fiduciary relationship between the parties, diligence on the part of the defrauded party does not require as prompt or as searching an inquiry into the conduct of the other party as when the parties are strangers or are dealing at arm's length. *Andress,* 672 S.W.2d at 630; *Bush,* 500 S.W.2d at 890; *see also Gaynier v. Ginsberg,* 715 S.W.2d 749, 756 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Pace v. McEwen,* 574 S.W.2d 792, 797 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.).

Under the declaration, appellants assumed the responsibility for managing the condominium until an owners' association could be formed. The owners of individual apartments who would later form the association put their trust in appellants and relied upon them to fairly and competently carry out their duties, and a fiduciary relationship was thus established between appellants and the owners. *See Texas Bank and Trust Co. v. Moore,* 595 S.W.2d 502, 507 (Tex.1980); *Hruska v. First State Bank,* 727 S.W.2d 732, 736 (Tex.App.—Houston [1st Dist.] 1987), *modified,* 747 S.W.2d 783 (Tex.1988); *Bush,* 500 S.W.2d at 890. There was sufficient evidence

presented at trial for the court to conclude that appellee in the exercise of reasonable diligence could not have been expected to discover appellants' failure to collect assessments against itself at least until the control and books of the condominium were handed over to appellee in 1984. This would place the present action well within the four year statute of limitations.

■ Finally, we will address appellants' complaints that as a matter of law, and by the great weight and preponderance of the evidence, any assessments owed by Bayhouse were offset by expenses paid entirely by Bayhouse. In considering a "no evidence", "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

Appellants complain that during the development period Bayhouse paid for certain items directly which should be credited against the assessments now claimed. Bayhouse claims that it paid a total of $27,481.83 to paint the condominium a different color, to replace furniture around the swimming pool, and for landscaping. Appellee does not dispute that these expenditures were made. The dispute is whether these expenses are properly charged to appellants as a cost of constructing and marketing the condominium, or should be charged to appellee as a maintenance expense.

The declaration provides for maintenance in the following paragraphs:

10.1 The maintenance, replacement and repair of the common elements shall be the continuing responsibility of the Association and the cost thereof shall be a common expense....

21.2 The Association, acting solely through the Board, shall include in the regular assessments an adequate reserve for maintenance, repair and replacement of those common elements that must be replaced on a periodic basis.

Further, the association is granted the power in paragraph 9.3.3 of the declaration, "[t]o operate, maintain and repair the common elements including landscaping ... and the exterior surfaces of the apartments," and in 9.3.15, "[t]o do all other acts necessary for the operation and maintenance of the Property...."

Deeds, like contracts, are to be interpreted by determining the intention of the parties to the instrument. *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 524 (Tex.1982); *Harris v. Annuity Board of the Southern Baptist Convention*, 666 S.W.2d 346, 349 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). The intention of the parties imposing a covenant is to be ascertained from the language of the covenant itself construed in connection with the surrounding circumstances. *Scott v. Rheudasil*, 614 S.W.2d 626, 629 (Tex.Civ. App.—Fort Worth 1981, no writ). Conduct of the parties which indicates a construction that the parties have themselves placed on the contract may be considered in determining the parties' true intent. *Consolidated Engineering Co. v. Southern Steel Co.*, 699 S.W.2d 188, 192–93 (Tex. 1985). Great, if not controlling, weight should be given by courts to the interpretation placed on an instrument of uncertain meaning by the parties themselves, and courts might fully assume that parties to an instrument are in the best position to know what was intended by language employed. *Alkas v. United Savings Ass'n of Texas, Inc.*, 672 S.W.2d 852, 858 (Tex.App. —Corpus Christi 1984, writ ref'd n.r.e.).

In the present case, Richard Vincent, an officer of TRGC, testified that the expenses in question were intentionally not

charged to the owners' association, as other expenses had been, because appellants had determined that it would be in their best interest to avoid future litigation with the association on who should bear these expenses under the terms of the declaration. The trial court had sufficient evidence from the appellants' own initial assumption of these expenses to construe them as construction and marketing expenses, falling outside the maintenance and repair for which appellee was responsible under the declaration. In addition, the Texas Condominium Act, Section 81.204, does not contemplate that administrative expenses for maintenance and repair include those necessary for the reconstruction or replacement of common elements, as the court could have reasonably concluded occurred here. *See Pooser v. Lovett Square Townhomes Owners' Association*, 702 S.W.2d 226, 232 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). These expenses then could not be used to offset the assessments owed to appellee. Appellants' first point of error is overruled.

■ In a second point of error appellant TRGC complains that, because of its status as a limited partner, the trial court erred in holding it jointly liable for assessments. Under the Texas Uniform Limited Partnership Act, Tex.Rev.Civ.Stat.Ann. art. 6132a, § 8(b)(3) (Vernon Supp.1988), a limited partner does not become liable as a general partner merely by acting "as a contractor, agent, or employee of the partnership or of a general partner." TRGC, in its capacity as a separate entity and not as a partner, contracted to act as the agent for Bayhouse in managing the condominium. Appellee contends, however, that liability extends to TRGC, not in its capacity as a limited partner, but independently both by its own tortious conduct in failing to make assessments against Bayhouse, and by its obligation under the management agreement to indemnify Bayshore.

The cause of action for assessments, however, is not based on tortious conduct. The assessments are based on covenants between Bayhouse and the other owners of apartment units. TRGC's failure to collect the assessments may have been tortious and even fraudulent, but appellee's right to the assessments is still based on the underlying debt and not on TRGC's failure properly to collect that debt.

The management agreement between Bayhouse and TRGC does provide for indemnification by TRGC for a broad range of claims and expenses for which Bayhouse might be liable. However, we need not determine whether assessments fall under the indemnification clause. The only party generally entitled to sue on a contract of indemnity is the indemnitee, unless the contract was also clearly made for the benefit of a third party claiming against the indemnitee. *See House of Falcon, Inc. v. Gonzalez*, 583 S.W.2d 902, 906 (Tex.Civ.App.—Corpus Christi 1979, no writ); *Fidelity & Deposit Co. of Maryland v. Reed*, 108 S.W.2d 939, 941 (Tex.Civ.App.—San Antonio 1937, no writ). Since the indemnification clause in the present case did not suggest that it was meant to benefit anyone other than Bayhouse, appellee has no cause of action under this clause against TRGC.

The judgment improperly failed to respect TRGC's status as a limited partner, by making it jointly and severally liable with Bayhouse for the assessments. Appellant TRGC's second point of error is sustained.

■ In their third point of error appellants complain that the trial court erred in awarding attorney's fees to the appellee, because the evidence was legally and factually insufficient either to show that appellee made a proper prior demand for the amount of its claim, or to support the amount of the award of attorney's fees.

We will initially address appellants' complaint that appellee did not properly present the claim to them, as a prerequisite to an award of attorney's fees. Section 38.002 of the Texas Civil Practice and Remedies Code, in essentially the same form as prior Tex.Rev.Civ.Stat.Ann. art. 2226 (re-

pealed), provides the following procedure for recovery of attorney's fees:

> To recover attorney's fees under this chapter:
>
> (1) the claimant must be represented by an attorney;
>
> (2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and
>
> (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented.

Section 38.005 also provides, as did Article 2226, that Chapter 38 "shall be liberally construed to promote its underlying purposes."

No particular form or manner of presentment is required. *Ashford Development, Inc. v. USLife Real Estate Services Corp.*, 661 S.W.2d 933, 936 (Tex.1983); *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex.1981); *Western Casualty and Surety Co. v. Preis*, 695 S.W.2d 579, 589 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Manges v. Mustang Oil Tool Co.*, 658 S.W.2d 725, 730 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). The purpose of presentment is to make the opposing party aware that a claim is asserted against him, and to allow him an opportunity to pay the claim or to perform as required and to thereby avoid incurring an obligation for attorney's fees. *Carrington v. Hart*, 703 S.W.2d 814, 818 (Tex.App.—Austin 1986, no writ); *Various Opportunities, Inc. v. Sullivan Investments, Inc.*, 677 S.W.2d 115, 119 (Tex.App.—Dallas 1984, no writ); *Preis*, 695 S.W.2d at 589; *Manges*, 658 S.W.2d at 730. Neither the filing of suit, nor the allegation of a demand in the pleadings can constitute the presentment of a claim for purposes of the statute. *Preis*, 695 S.W.2d at 589; *Manges*, 658 S.W.2d at 730.

In the present case, appellee points to several instances in the record which indicate that the association gave notice of its claims to the appellants. In particular, appellee points to the minutes of several board meetings of the association, which were admitted into evidence without objection, to show that a demand letter was sent on behalf of appellee to TRGC, claiming the amounts later claimed in the petition for assessments and accounting fees. In addition, Brown testified that a demand had been made on TRGC which had been turned down. This is sufficient evidence that demand was made against TRGC for the amounts claimed in the present suit. In addition, under the management agreement, TRGC was clearly the agent for Bayhouse in relation to any disputes that might result from TRGC's management of the condominium. *See Jorgensen v. Stuart Place Water Supply Corp.*, 676 S.W.2d 191, 194 (Tex.App.—Corpus Christi 1984, no writ). It was only reasonable for appellee to assume that any presentment of a claim on TRGC would also constitute a presentment to Bayhouse. *See Allright, Inc. v. Guy*, 696 S.W.2d 603, 605 (Tex.App.—Houston [14th Dist.] 1985, no writ).

■ In their challenge to the legal and factual sufficiency of the evidence to show the amount of attorney's fees, appellants complain that, because appellee failed to designate attorney Walter Brown as an expert on attorney's fees in answer to interrogatories, his testimony, the only evidence offered by appellee on attorney's fees, should not be considered. *See E.F. Hutton & Co. v. Youngblood*, 741 S.W.2d 363 (Tex.1987).

Just before Brown testified at trial, the following occurred:

> Mr. Curl [counsel for appellants]: Your Honor, I'm going to object to any testimony about attorney's fees, because Mr. Brown has not been designated as an expert witness.
>
> Ms. Robinson [counsel for appellee]: Your Honor, he was designated as an expert witness.
>
> The Court: Objection overruled, you may proceed.

To preserve the right to complain on appeal about the admission of testimony, an objection must have been specific

enough to enable the trial court to understand its precise nature. *MBank Dallas, N.A. v. Sunbelt Manufacturing, Inc.,* 710 S.W.2d 633, 638 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Texas Municipal Power Agency v. Berger,* 600 S.W.2d 850, 854 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). Here, appellants' objection was that Brown had not been designated as an expert. This was incorrect, as Ms. Robinson pointed out, because Brown had been listed as an expert in response to appellants' interrogatory. Appellee did fail to comply with Tex.R.Civ.P. 166b by not specifying attorney's fees as the subject matter on which Brown was expected to testify. This would have been a proper ground for denying his testimony had appellants pursued their objection further at trial. However, because appellants never informed the trial court that the specific nature of their objection was not that Brown had not been designated as *an expert,* but that he had not been designated as an expert *on attorney's fees,* they have waived that complaint here.

Brown, though not designated as counsel for the appellee, was familiar with the case from his position on the board of directors of the owners' association. He also assisted Ms. Robinson in preparing for trial. Brown testified that $75.00 an hour was a very reasonable fee, and that 200 hours would be a reasonable time to spend preparing the case for trial.

Appellants complain that appellee should not be allowed attorney's fees without specific evidence of how many hours were in fact required to prepare for trial and what the attorney in fact charged for her services. The trial court, however, has great latitude in awarding attorney's fees. *Gulf Paving Co. v. Lofstedt,* 144 Tex. 17, 188 S.W.2d 155, 160 (Tex.1945); *Terminix International, Inc. v. Lucci,* 670 S.W.2d 657, 666 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.). Expert opinion is competent evidence of attorney's fees, and the usual and customary fee charged by attorneys in the general locality or area shall be pre-

sumed to be reasonable unless rebutted by competent evidence. *City of Houston v. Blackbird,* 658 S.W.2d 269, 271 (Tex.App. —Houston [1st Dist.] 1983, writ dism'd); *see also Maintain, Inc. v. Maxson–Mahoney–Turner, Inc.,* 698 S.W.2d 469, 473 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.); *Ortiz v. O.J. Beck & Sons, Inc.,* 611 S.W.2d 860, 867 (Tex.Civ.App.—Corpus Christi 1980, no writ). Brown's unrebutted testimony that he was familiar with the type of work done in the present case and that an amount of 200 hours, at $75.00 per hour, would not be unreasonable was sufficient evidence for the court to award half that amount, or $7,500.00 in attorney's fees. *See La Sara Grain Co. v. First National Bank,* 673 S.W.2d 558, 567 (Tex. 1984).

■ Appellants finally complain that appellee failed to segregate the services rendered in bringing suit against appellants from those rendered in bringing suit against Bayshore, Ltd. and Gill Savings Association, defendants which were both non-suited before trial. Appellee originally mistook Bayshore, Ltd. for Bayhouse, Ltd. and filed its initial petition against the former alleging the same grounds for relief that it later alleged against Bayhouse, Ltd., after realizing the mistake. Appellee originally joined Gill Savings Association merely because Gill financed the project, was a third party beneficiary of the management agreement, and appellee believed it to be a necessary party to the suit. Appellee, however, alleged no independent claims against either Bayshore or Gill.

In cases where a party has failed to distinguish the work done on a claim for which he may recover attorney's fees from the work done on the defense of a separable claim, he is not entitled to recover any attorney's fees. *Bray v. Curtis,* 544 S.W. 2d 816, 819 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). However, where the causes of action are so intertwined as to be more or less inseparable, the total amount of attorney's fees may be awarded, and a segregation of work is unnecessary.

*Burditt v. Sisk,* 710 S.W.2d 114, 116 (Tex. App.—Corpus Christi 1986, no writ); *De La Fuente v. Home Savings Association,* 669 S.W.2d 137, 146 (Tex.App.—Corpus Christi 1984, no writ); *see also Flint & Associates v. Intercontinental Pipe & Steel, Inc.,* 739 S.W.2d 622, 624–25 (Tex.App.—Dallas 1987, writ denied); *First–Wichita National Bank v. Wood,* 632 S.W.2d 210, 215 (Tex. App.—Fort Worth 1982, no writ); *Ortiz v. O.J. Beck & Sons, Inc.,* 611 S.W.2d 860, 867 (Tex.Civ.App.—Corpus Christi 1980, no writ). In the present case, appellee was not required to segregate the work done on essentially the same claims in a fictitious apportionment between work rendered against appellants and work rendered against the non-suited defendants. Appellants' third point of error is overruled.

In their fourth point of error appellants complain that there was no evidence to show that TRGC's failure to keep adequate records was a proximate cause of damages to appellee.

Certified Public Accountant Gary Gummelt testified that his accounting firm, Fancher & Co., had been hired by the association, shortly after control of the condominium had passed to it, to audit the books for the development period. TRGC sent the books and records to Brown, who then sent them to Fancher & Co. Gummelt, however, found that the materials turned over to him were not auditable. In order to reconstruct the books and records so that they would be auditable and the association could continue with its business, Gummelt and Fancher provided services for which they charged the association $4,872.00. Appellee received an award of $2,735 to compensate them for appellants' negligent failure to keep the records and books in order.

Appellants complain that the costs incurred for reviewing the records were an auditing expense for which appellee would have been responsible even during the development period. Appellants, however, fail to distinguish "auditing," which has not been performed on the books, from the "reconstruction" of the records and books which Gummelt testified was necessary for the condominium to continue its business. There is sufficient evidence to show that the condition in which appellants left the books proximately caused appellee to pay accounting fees to reconstruct those books that it would not otherwise have had to pay. Appellants' fourth point of error is overruled.

That portion of the judgment of the trial court holding TRGC jointly and severally liable for $14,484.09 in assessments, $7,063.74 in late fees on the assessments, and $7,063.74 in pre-judgment interest on the assessments, is REVERSED AND RENDERED. The remainder of the judgment is AFFIRMED.