TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00747-CV







Starlight, L.P./Xarin Austin I, Ltd., Loren Baxter, George Ablin

and Hayden Property Management, Inc., Appellants


v.



Xarin Austin I, Ltd., Loren Baxter, George Ablin and Hayden Property

Management, Inc./Starlight, L.P., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 94-01269, HONORABLE JOSEPH HART, JUDGE PRESIDING







 Starlight, L.P. sued Xarin Austin I, Ltd. ("Xarin"), Hayden Property Management,
Inc. ("HPM"), Loren Baxter, and George Ablin (collectively "Defendants") for damages arising
out of Starlight's purchase of a commercial building from Xarin. Starlight asserted claims for
common-law and statutory fraud, violations of the Deceptive Trade Practices Act ("DTPA"), (1) and
breach of contract. Xarin counterclaimed seeking judicial foreclosure pursuant to the terms of the
real estate lien note between Starlight and Xarin. The counterclaim was tried to the court, which
ruled in Starlight's favor that Starlight had not defaulted on its obligation. The action for damages
from the sale of the building was tried to a jury, which found in favor of Starlight. However, the
trial court granted Defendants' motion for judgment notwithstanding the verdict ("JNOV"), except
for one claim concerning offset for a settlement agreement between Starlight and HDR
Engineering, a former tenant of the building. Both sides appeal the trial court's judgment. We
will affirm in part and reverse in part.


FACTUAL AND PROCEDURAL BACKGROUND

 On August 31, 1992, Starlight's assignor signed an earnest money contract to
purchase Fountain Park Plaza I (the "Plaza") from Xarin for $1,896,000. The closing occurred
on June 10, 1993, at which time Starlight executed a real estate lien note and deed of trust. The
Plaza is located on IH-35 in Austin, south of Town Lake. It consists of two office buildings, one
being four stories tall and the other being one story.

 Xarin is a California limited partnership, of which Loren Baxter is a general partner
and George Ablin is a limited partner. HPM, operated by Eddie Hayden, was the property
manager for the Plaza before Xarin sold it to Starlight. Starlight is a Texas limited partnership
controlled by Richard Hardin.

 In July 1993, a month after the closing on the sale of the Plaza, Starlight was
contacted by the Texas Department of Health regarding an investigation of air quality at the Plaza. 
On August 31, 1993, Hardin wrote to Baxter requesting information regarding any air quality
problems and stating that Starlight would exercise its right of set-off to cover any repairs needed. 
Xarin denied prior knowledge of any air quality problems, but offered to undo the contract and
take back the building. Declining to rescind the transaction, Starlight filed suit for defects in the
heating, ventilation, and air-conditioning system (HVAC) in February 1994. Starlight apparently
first learned of roof leakage problems in March 1994; it subsequently amended its petition to add
a request for damages for roof repairs. Starlight sold the Plaza in 1994, allegedly because it could
not afford to pay the repair costs of the roof and HVAC.

 In March 1994, the trial court signed an agreed order requiring Starlight to make
note payments into the registry of the court and prohibiting Xarin from taking any action to
accelerate the balance due on the note. In May 1994, Xarin filed a counterclaim asserting that
Starlight was in default on the real estate lien note. The parties agreed to try the counterclaim to
the trial court without a jury. After a trial on the counterclaim, the court rendered judgment
favoring Starlight, concluding that there had been no defaults in any payments under the note and
that Starlight had made all payments due under the note in compliance with the agreed order.

 The remainder of the lawsuit was tried to a jury in May and June 1996. The jury
found that all Defendants except Ablin were liable for common-law fraud, and that all Defendants
were liable for statutory fraud and deceptive trade practices. The jury found the cost of repair to
be $54,677.12 for the roof and $103,500 for the HVAC. The jury found exemplary damages
against Xarin and Ablin, and found additional DTPA damages against Xarin and Baxter. 
Defendants filed a motion for judgment notwithstanding the verdict, which the trial court granted. 
The trial court filed findings of fact and conclusions of law. Both sides appeal.


I.  APPEAL BY XARIN AND THE OTHER DEFENDANTS

 Defendants raise six issues on appeal: (1) There is conclusive evidence that
Starlight defaulted in its payments under the real estate lien note; (2) the trial court's failure to find
that Starlight defaulted in its payments under the real estate lien note is against the great weight
and preponderance of the evidence; (3) there is legally insufficient or (4) factually insufficient
evidence to support the trial court's finding that Starlight timely and properly made all payments
due under the note; (5) the trial court erred in failing to render judgment against Starlight for the
amount due under the note and for judicial foreclosure of Xarin's lien because Starlight was in
default on the note, was given notice of the default, and failed to timely cure the default; and (6)
the trial court erred in failing to award Xarin its attorney's fees.

 In deciding a legal-sufficiency point of error that attempts to overcome an adverse
fact finding as a matter of law, we must first consider only the evidence and inferences tending
to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. 
If there is no evidence to support the finding, we must then examine the entire record to see if the
contrary proposition is established as a matter of law. Sterner v. Marathon Oil Co., 767 S.W.2d
686, 690 (Tex. 1989); Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982); Texas & N.O.R.R.,
v. Burden, 203 S.W.2d 522, 528-31 (Tex. 1947). See generally William Powers, Jr. & Jack
Ratliff, Another Look at "No Evidence" and "Insufficient Evidence", 69 Tex. L. Rev. 515, 523
(1991); Michol O'Connor, Appealing Jury Findings, 12 Hous. L. Rev. 65, 78-80 (1974). A
factual-sufficiency review required the court to consider and weigh all of the evidence and set
aside the verdict and remand for a new trial if the court concludes that the verdict is so against the
great weight and preponderance of the evidence as to be manifestly unjust. In re King's Estate,
244 S.W.2d 660, 661 (Tex. 1951); First State Bank v. Keilman, 851 S.W.2d 914, 930 (Tex.
App.--Austin 1993, writ denied).

 In issues one through four, Xarin challenges the following conclusions of law made
by the trial court:


13. There have been no defaults in any payment under the Real Estate Lien Note
at any time by Starlight, L.P. because the payments made by it into the
registry of the Court satisfied its obligation under the Real Estate Lien Note
to make monthly payments to Xarin Austin I, Ltd. in the amount of $4,658.91.


14. Starlight, L.P. timely and properly made all payments due under the Real
Estate Lien Note into the registry of the Court in compliance with, and
pursuant to, the Agreed Order and Order on Temporary Injunction entered by
the Court in this case.



 Xarin first argues that between March 25, 1994 and April 19, 1995, there was no
court order shielding Starlight from its obligation to pay Xarin. Xarin points out that the agreed
order required Starlight to make its February 1994 and March 1994 payments into the registry of
the court and that if successful at a temporary injunction hearing, Starlight would be required to
continue making its monthly payments into the registry of the court. The temporary injunction
hearing was apparently never held. However, on September 7, 1994, Xarin agreed to Starlight's
motion requesting that the deposited funds be placed into an interest-bearing account, which
recited that the agreed order required Starlight to make monthly deposits into the registry of the
court. The trial court granted the agreed motion.

 In October 1994, having sold the Plaza, Starlight filed a motion to deposit the sale
proceeds into the registry of the court. Xarin objected to this motion, asserting that Starlight was
already in default. Beginning in December 1994, Starlight ceased making the monthly payments
into the court's registry. On March 2, 1995, the trial court granted Xarin's motion that the agreed
order be set aside. On March 21, 1995, the trial court signed a temporary injunction order that
again required Starlight to make monthly payments into the court's registry, including the
payments from December 1994 through March 1995, and likewise to deposit the sale proceeds into
the court's registry.

 Xarin argues that conclusion of law thirteen conflicts with finding of fact ten, which
states that Starlight did not make payments from December 1994 through March 1995. During
this period, however, Starlight had offered to deposit the entire balance due on the Note into the
registry, but that action was objected to by Xarin. As soon as the trial court resolved the dispute
and ordered Starlight to deposit the payments for December 1994 through March 1995 and the sale
proceeds into the registry, Starlight did so.

 Considering the evidence pertaining to the trial court's conclusions, especially
evidence that all parties operated as if the agreed order continued past March 1995 for several
months and reaffirmed it in the agreed motion to deposit the funds into an interest-bearing account,
we conclude that the record and the trial court's findings support conclusions of law thirteen and
fourteen. We overrule points one through four.

 In its fifth issue, Xarin asserts that the trial court erred in failing to render judgment
against Starlight for the amount due under the promissory note, and for a judicial foreclosure of
Xarin's lien, because Starlight was in default on the note, was given notice of the default, and
failed to timely cure the default. Xarin argues that it was entitled to accelerate the entire debt if
a default occurred and that it gave Starlight the required proper notice of default in January 1995. 
Under the real estate lien note, however, Xarin was not allowed to accelerate or enforce its right
to foreclose on the property in the event of a dispute until a final judicial determination of
Starlight's right to set off the amount in controversy. The agreed order also prohibited such
action. We conclude that Starlight adequately raised the issue of its right to a setoff and that the
trial court did not err in failing to render judgment against Starlight on this issue.

 In its sixth issue raised, Xarin complains that it was not awarded its attorney's fees. 
Having concluded that the court did not err in denying Xarin's counterclaim, we also conclude it
did not err in failing to award Xarin its attorney's fees.


II.  STARLIGHT'S APPEAL

 Starlight's appeal from the trial court's JNOV raises six issues: (1) whether there
was any evidence to support the jury's award of remedial or "cost of repair" damages, (2) whether
Starlight was legally entitled to recover remedial "economic loss" damages for its common-law
fraud, statutory fraud, and DTPA claims, (3) whether the evidence was legally and factually
sufficient to support the trial court's holding that Starlight had waived its claims by failing to give
written notice as provided in the inspection provision of the earnest money contract, (4) whether
the trial court erred in denying Starlight's recovery of exemplary damages awarded by the jury,
(5) whether the trial court erred in denying Starlight's claim for attorney's fees and expert witness
fees, and (6) whether the trial court erred in failing to award Starlight a recovery of its costs.

 A trial court may disregard a jury's findings and grant a motion for JNOV only
when there is no evidence on which the jury could have made its findings. Tex. R. Civ. P. 301;
Mancorp, Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex. 1990). In reviewing the grant of the
motion, we review the record in the light most favorable to the jury findings, considering only the
evidence and inferences that support the findings and rejecting all contrary evidence and
inferences. Johnson & Johnson Medical, Inc. v. Sanchez, 924 S.W.2d 925, 929 (Tex. 1996). If 
more than a scintilla of competent evidence supports the jury's findings, the JNOV must be
reversed. Mancorp, 802 S.W.2d at 228.

 The first issue concerns cost-of-repair damages. The Texas Supreme Court recently
reiterated that Texas recognizes two measures of damages for common-law fraud: the out-of-pocket measure and the benefit-of-the-bargain measure. Formosa Plastics Corp. v. Presidio
Eng'rs & Contractors, Inc., 960 S.W.2d 41, 49 (Tex. 1998). Texas courts have held that when
property has sustained damage that diminishes its value but does not impair the structure as a
whole, the cost of repairing or restoring the property is an appropriate element of damages. See
Greene v. Bearden Enters., Inc., 598 S.W.2d 649, 653 (Tex. Civ. App.--Fort Worth 1980, writ
ref'd n.r.e.); Wright v. Carpenter, 579 S.W.2d 575, 578 (Tex. Civ. App.--Corpus Christi 1979,
writ ref'd n.r.e.); Drury v. Reeves, 539 S.W.2d 390, 394 (Tex. Civ. App.--Austin 1976, no writ);
Hughes v. Halliday, 471 S.W.2d 88, 90 (Tex. Civ. App.--Waco 1971, no writ).

 In Wright, the court approached the cost to repair as consequential damages. 579
S.W.2d at 578 (cost of repair was suffered as a consequence of appellee's reliance on appellant's
representation). The supreme court has recognized the possibility of recovery for consequential
damages. Formosa Plastics, 960 S.W.2d at 49 n.1. In the present case, Starlight alleges that the
cost of repairing the roof and HVAC stemmed from Xarin's representation in the contract that it
knew of no material problems. Assuming the sufficiency of the evidence to demonstrate fraud,
we conclude Starlight may recover for the costs to repair the roof and HVAC.

 Starlight next asserts that the evidence was legally sufficient to demonstrate the cost
of repairs. In the earnest money contract, dated August 31, 1992, Xarin represented, among other
things, that there were no material defects in the property or improvements. On the date of
closing, June 10, 1993, Xarin signed a "closing agreement" in which it agreed that "[a]ll
representations and warranties contained in the Earnest Money Contract . . . are hereby renewed
and restated to Purchaser and shall survive closing." The cost to repair the roof was determined
as of May 25, 1994. The cost to repair the HVAC was determined as of March 4, 1994, with a
supplemental determination made on November 4, 1994. The trial court found that Xarin had no
continuing duty to repair building defects after June 10, 1993. The trial court concluded that the
cost to repair should be measured from the date of the sale of the property and that the evidence
of cost to repair was, as a matter of law, too remote in time from the date of sale to constitute any
evidence of such damages.

 Xarin cites several cases to support the trial court's conclusion that cost-of-repair
damages must be measured from the date of the deceptive act. Odom v. Meraz, 810 S.W.2d 241,
245 (Tex. App.--El Paso 1991), writ denied, 835 S.W.2d 626 (Tex. 1992); HOW Ins. Co. v.
Patriot Fin. Servs. of Tex., Inc., 786 S.W.2d 533, 546-47 (Tex. App.--Austin 1990, writ denied);
Building Concepts, Inc. v. Duncan, 667 S.W.2d 897, 901 (Tex. App.--Houston [14th Dist.] 1984,
writ ref'd n.r.e.); Fidelity & Deposit Co. of Maryland v. Stool, 607 S.W.2d 17, 24-25 (Tex. Civ.
App.--Tyler 1980, no writ). We believe these cases are distinguishable from the present one.

 In Duncan, the court stated that "[w]hile it is established that actual damages may
extend beyond the immediate time of a deceptive act, we believe the damages alleged must bear
some reasonable relation in time and circumstances to the producing cause of such damages." 667
S.W.2d at 901 (emphasis added). The court found nothing in the record to support the Duncans'
contention that deceptive acts by the builders in 1976 and 1977 caused a delay in completion
continuing until the trial in 1982. The Duncans had purchased another home in 1977 when their
promised home was not finished at that time. Thus, the issue was not the date from which the cost
of damages should have been measured, but whether the earlier deception caused damage that
extended for five years.

 In HOW, this Court described two allowable measures of damages: difference in
value and the "remedial" cost of repair. 786 S.W.2d at 546. We held that to prove the difference-in-value measure, one needed to provide evidence of the difference at the time of the sale. We did
not address at what time the cost-of-repair damages should be measured.

 In Odom, the purchasers of a house brought a DTPA action against the seller for
damages arising from the encroachment of one of their walls onto adjoining property. 810 S.W.2d
at 245. The purchasers asserted that the encroachment clouded title on the property. The only
evidence in the record concerned the loss of a proposed sale of the house, after improvements had
been made, approximately two years after the date of the purchase. The court concluded that this
was no evidence of either benefit-of-the-bargain or out-of-pocket damages at the time of sale.

 In Stool, the court decided that the parties contracted for a cost-of-repair measure
of damages if the contractor failed to conform to the building plans. 607 S.W.2d at 24. The
contractor completed the residence in 1973. In March 1978, after five years of negotiations, the
contractor refused an oral and written request to correct the defects in the house. The court ruled
that the breach occurred in March 1978. Appellants argued that evidence of cost to repair in the
fall of 1978 was insufficient since the breach occurred in March and especially since repair costs
were rising at the time. The court dismissed this argument, concluding that the contractor, as the
party charged with the breach, had the burden to demonstrate any failure to mitigate damages, but
that the contractor had offered no evidence of a failure to mitigate damages.

 In the present case, Starlight obtained cost-of-repair estimates within a reasonable
time of learning of the defects. Accordingly, these estimates provide more than a scintilla of
evidence of the actual damages. No one suggests there was any improper delay in obtaining these
estimates, and there is no evidence of a failure to mitigate damages. We conclude that the
evidence of costs of repair presented in this case was not so remote in time from the date of sale
as to constitute no evidence of such costs. See Jim Walter Homes, Inc. v. Gonzalez, 686 S.W.2d
715, 717-18 (Tex. App.--San Antonio 1985, writ dismissed) (allowing evidence of estimates of
what it would cost to restore home to represented quality rather than what it would have cost on
date of deceptive act). (2)

 The second issue concerns whether Starlight could recover remedial "economic
loss" damages for its common-law fraud, statutory fraud, or DTPA claims. Since the rendition
of the trial court's judgment, the Texas Supreme Court has held that "tort damages are recoverable
for a fraudulent inducement claim irrespective of whether the fraudulent representations are later
subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject
matter of the contract." Formosa Plastics, 960 S.W.2d at 47. We conclude that Starlight can
recover economic damages for its fraud and DTPA actions.

 Xarin asserts that because the representation about which Starlight complains was
made only within the contract, Starlight is limited to a breach of contract action. We disagree. 
Although a contractual relationship could create duties under both contract law and tort law, the
nature of the injury most often determines which duty is breached. Id. at 45, 47. The injury here
flows from Xarin's representation that the property contained no material defects when, as found
by the jury, Xarin knew of such defects. In addition, liability could have been found by the jury
based on a failure to disclose as well as affirmative representations within the contract. We
conclude that, under these circumstances, Starlight was not limited to an action in contract.

 The third issue concerns the trial court's conclusion that Starlight waived any
objections to the condition of the property by failing to give written notice as provided in the
inspection provision of the earnest money contract. The contract contained an "as is" clause by
which Starlight agreed to accept the property with any defects it may have, subject to an initial 45-day window during which Starlight could inspect the property and terminate the transaction if it
discovered unacceptable defects. By purchasing property "as is," a buyer agrees to make its own
evaluation of the bargain and accept the risk that it could be wrong. Prudential Ins. Co. of Am.
v. Jefferson Assocs., Ltd., 896 S.W.2d 156, 161 (Tex. 1995). However, a buyer is not bound by
an "as is" clause if proof of fraudulent misrepresentation is shown. Id. at 162; Pairett v.
Gutierrez 969 S.W.2d 512, 516 (Tex. App.--Austin 1998, pet. denied). Because fraudulent
inducement was found here, Starlight did not waive its right to recover for damages caused by that
fraud.

 In its fourth issue on appeal, Starlight asserts that if this Court reverses the JNOV
as to actual damages, Starlight nevertheless may recover the exemplary damages awarded by the
jury. A party is not entitled to recover exemplary damages unless it recovers actual damages. See
Nabours v. Longview Savs. & Loan Ass'n, 700 S.W.2d 901, 903 (Tex. 1985). The trial court
based its denial of exemplary damages on its conclusion that Starlight could not recover actual
damages. Because we have concluded that Starlight is entitled to recover actual damages, we
agree that Starlight may also recover exemplary damages.

 The fifth issue involves attorney's and expert witness fees. To avoid the possibility
of remand on this issue, the trial court made findings of fact as to the reasonable and necessary
fees of Starlight's attorneys and experts. Because we have concluded that Starlight is entitled to
recover for its damages, it is entitled to recover the attorney's and expert witness fees as
determined by the trial court. See Tex. Bus. & Com. Code Ann. §§ 17.50(d), 27.01(e) (West
1987 & Supp. 1998).

 The sixth issue involves costs. The successful party to a suit is generally entitled
to recover the court costs incurred therein. See Tex. R. Civ. P. 131. In granting the motion for
JNOV, the trial court did not allow Starlight to recover costs from defendants. Because we have
concluded that Starlight is entitled to recover the damages as found by the jury, it should also
recover costs of court.


III.  DEFENDANTS' CROSS-ISSUES

 In their first cross-issue, Defendants assert that the trial court correctly disregarded
the jury's answers to the damages question regarding the cost of repair because Starlight failed to
obtain a jury finding that the defects could not be repaired; therefore, there was no predicate for
the jury's answers, which were based on the cost to replace the roof and HVAC system. See
Turner, Collie & Braden, Inc. v. Brookhollow, Inc., 642 S.W.2d 160, 165 (Tex. 1982) (special
issue would have been proper as submitted had it been predicated on jury finding that line could
not be repaired for less than cost of replacement). Although Defendants assert that Starlight based
its estimates on replacing rather than repairing the roof and HVAC, we are not similarly
persuaded. The evidence to which Defendants point indicates only that certain parts would need
to be replaced in restoring the roof and HVAC. Nonetheless, even though some parts would need
replacing, we do not believe that the result of the process can be characterized as replacement
rather than repair. The jury found the estimates of work to be done to the roof and HVAC to be
reasonable and necessary. Thus, there was no need for a finding that the defects could not be
repaired.

 In their second cross-issue, Defendants assert that the trial court correctly granted
the JNOV as to Defendants Baxter, Ablin, and HPM because Starlight acknowledged that it was
not relying on representations outside the earnest money contract between Xarin and Starlight. 
In the contract, Starlight agreed that:


This Contract constitutes the entire agreement of the parties hereto and, unless
specified otherwise herein, no representation, inducement, promises or prior
agreements, oral or written, between the parties or made by any agent on behalf of
the parties or otherwise shall be of any force and effect.


Defendants assert that this agreement negates a fraudulent inducement claim based on any
representations other than those made in the earnest money contract itself, which were made only
by Xarin.

 In Schlumberger Technology Corp. v. Swanson, 959 S.W.2d 171, 174 (Tex. 1997),
the parties entered into a release agreement following months of dispute over a venture involving
an offshore diamond mining project. In the agreement, Schlumberger agreed to buy the Swansons'
interest in a joint venture for more than $800,000, while the Swansons agreed to relinquish all
rights in the venture and to release all causes of action against Schlumberger. Id. The Swansons
later filed suit against Schlumberger, contending that they agreed to Schlumberger's low-price
buyout only after being induced by misrepresentations about the value and feasibility of the
venture. Id. at 179. The supreme court found the release agreement dispositive of whether the
Swansons could prevail on a fraud claim because the agreement contained the following language:


[E]ach of us [the Swansons] expressly warrants and represents and does hereby
state . . . and represent . . . that no promise or agreement which is not herein
expressed has been made to him or her in executing this release, and that none of
us is relying upon any statement or representation of any agent of the parties being
released hereby. Each of us is relying on his or her own judgment and each of us
has been represented by Hubert Johnson as legal counsel in this matter. The
aforesaid legal counsel has read and explained to each of us the entire contents of
this Release in Full, as well as the legal consequences of this Release . . . .



Id. at 180 (emphasis added by supreme court). The court found that, by this language, the
Swansons had unequivocally disclaimed reliance on representations by Schlumberger about the
project's feasibility and value. Id. Consequently, the court concluded that the Swansons were
precluded as a matter of law from claiming that they were fraudulently induced to sell their interest
in the project. Id.

 In the present case, the no-reliance clause in the contract is not as emphatic as the
clause in Schlumberger, but it is nonetheless clear and straightforward in establishing that Starlight
agreed it was relying only on representations made in the contract itself in purchasing the Plaza. 
Therefore, there can be no liability here based on the affirmative representations of Baxter, Ablin,
and HPM. However, this does not negate the possibility that those parties may be liable based on
their failure to disclose material information.

 Having examined which jury answers established liability based on affirmative
representations as opposed to a failure to disclose material facts, we conclude that, as a matter of
law, Baxter and HPM could not have been found liable for common-law fraud or statutory fraud. (3) 
Because the question pertaining to Ablin was expressly based on failure to disclose, however,
Ablin could have been, and was, found liable for statutory fraud. (4) In addition, the jury was
allowed, under the questions presented, to find Baxter, Blin, and HPM liable for DTPA violations
due to a failure to disclose information. Therefore, neither Starlight's DTPA claims nor its
statutory-fraud claim against Ablin are negated by the no-reliance clause. These remaining claims
support the damages awarded by the jury against those defendants.

 In their third cross-issue, Defendants assert that the trial court correctly granted the
JNOV as to Ablin because he was only a limited partner, had no contact with Starlight before
closing, and had no knowledge about the roof or the HVAC system that Starlight did not also
have. The key to this issue is whether there is more than a scintilla of evidence that Blin had
knowledge of the defects; to the degree he failed to disclose what he knew, his status as a limited
partner is relevant only to the issue of his benefitting from Xarin's representation.

 Defendants cite three cases in support of their argument that Ablin is protected by
his status as a limited partner. See Leitch v. Hornsby, 935 S.W.2d 114, 117 (Tex. 1996);
Stephanz v. Laird, 846 S.W.2d 895, 904 (Tex. App.--Houston [1st Dist.] 1993, writ denied);
Richard Gill Co. v. Jackson's Landing Owners' Ass'n, 758 S.W.2d 921, 926 (Tex. App.--Corpus
Christi 1988, writ denied). These cases do not support Defendants' conclusion. In Leitch, the
court states that corporate officials are not liable for the corporation's tortious conduct; the court
notes, however, that officials may be liable for their own negligence. 935 S.W.2d at 117. In
Stephanz, the court found that the appellant had no duty to disclose the information in question. 
846 S.W.2d at 904. However, unlike the statutory fraud claim against Ablin in the present case,
the fraud claim against Stephanz was not based on Tex. Bus. & Com. Code Ann. § 27.01(d) (West
1987), which effectively creates a duty to disclose where a person has actual awareness of the
falsity of a representation made by another person and benefits from that false representation. In
Richard Gill Co., the court stated that a limited partner does not become liable as a general partner
merely by acting as an agent of the partnership, but the court did not address a limited partner's
potential liability as a separate entity for its own conduct. 758 S.W.2d at 926.

 Starlight presented evidence showing that, despite Blin's limited-partner status, he
was involved in the partnership's business activity and decisions. Ablin testified that in October
1992 he was considering whether to sell the Plaza and that his own notes from the time indicate
that in deciding whether to sell or retain the Plaza, he spoke to Baxter to get information about the
roof, HVAC, and asbestos, among other things. Ablin testified that he received little, if any,
information about the roof or HVAC from Baxter. Blin acknowledged that he was aware of an
asbestos problem at the building but did not disclose it to the buyers. He testified that HVAC
operating expenses were higher than he had projected. In September 1992, he was expecting to
spend $9,500 on HVAC repairs. There was also testimony that Ablin was aware of a Department
of Health investigation of air quality in the building and of persistent roof leaks. We conclude that
this is more than a scintilla of evidence that Ablin was aware of the problems with the roof and
HVAC.

 In their fourth cross-issue, Defendants assert that the trial court abused its discretion
in admitting a tape recording of a telephone conversation between Baxter and Hardin because any
probative value of the evidence was substantially outweighed by the danger of unfair prejudice. 
In order to obtain a reversal of a judgment based on an erroneous admission or exclusion of
evidence, an appellant must show: (1) that the trial court did in fact commit error, and (2) that
the error probably caused the rendition of an improper judgment. See Tex. R. App. P. 44.1(a);
Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989).

 The admission or exclusion of evidence rests within the sound discretion of the trial
court. New Braunfels Factory Outlet v. IHOP, 872 S.W.2d 303, 310 (Tex. App.--Austin 1994,
no writ). A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner,
or when it acts without reference to any guiding principles. Beaumont Bank, N.A. v. Buller, 806
S.W.2d 223, 226 (Tex. 1991). This Court may not reverse for abuse of discretion merely because
we disagree with a decision of the trial court. Id.

 Defendants point out that although the tape recording was admitted as evidence of
Blin's lack of truthfulness, see Texas Rules of Evidence 608(a), Blin had not yet testified and
therefore was not, at that point in the trial, a witness whose credibility could be impeached. 
However, even assuming it was error to admit impeaching evidence before the target of the
impeaching evidence had testified, because Blin did in fact later testify, we cannot say that such
error probably caused the rendition of an improper judgment.

 In their fifth cross-issue, Defendants assert that the trial court correctly granted
HPM's motion for JNOV because there was legally and factually insufficient evidence to support
the jury's answers to the liability and damages questions concerning HPM. Defendants argue that
HPM cannot be liable for DTPA claims by Starlight because Starlight was not a "consumer" as
to HPM. See Tex. Bus. & Com. Code Ann. § 17.45(4) (West 1987) (defining "consumer" under
the DTPA as one who "seeks or acquires by purchase or lease, any goods or services"); Qantel
Business Sys., Inc. v. Custom Controls Co., 761 S.W.2d 302, 305 (Tex. 1988). (5) In this regard,
Defendants contend Starlight cannot assert a DTPA claim against HPM because Starlight did not
purchase the Plaza from HPM. The DTPA does not attach derivative liability to defendants who
are innocently involved in a consumer transaction. Id. However, a consumer suing under the
DTPA need not establish contractual privity with the defendant as long as he shows that the
defendant has committed a deceptive act which is the producing cause of the consumer's damages. 
Id. The key to liability under the DTPA is whether the defendant's deceptive act occurred in
connection with the consumer transaction. See Amstadt v. U.S. Brass Corp., 919 S.W.2d 644,
649 (Tex. 1996). Therefore, the fact that Starlight purchased the Plaza from Xarin rather than
HPM does not of itself mean that HPM cannot be liable under the DTPA.

 In their sixth cross-issue, Defendants assert that the evidence was factually
insufficient to support the jury's findings on cost of repairs because the amounts found were far
in excess of what actually was reasonable and necessary to repair any defects for which there could
be liability. Defendants assert that Starlight's roof-repair expert, David Lawrence, testified that
the roof repair could be accomplished for around $12,000. However, Lawrence also testified that
such a repair would not stop the roof from leaking.

 Defendants argue that Starlight's HVAC-repair expert, Thomas Alexander, testified
that the HVAC could be adequately repaired for $3,000 to $5,000. Defendants assert that the
HVAC repairs presented by Starlight would constitute a significant upgrade rather than a mere
repair of the existing system. Alexander testified he was brought in by Starlight's property
manager to make recommendations on dealing with the numerous temperature complaints within
the Plaza and to look into indoor air-quality problems. When asked if he thought $193,500 would
be the reasonable and necessary cost to make those repairs, Alexander responded "yes." The jury
awarded $103,500 for the HVAC. Defendants point to no evidence contradicting Alexander's
testimony. Considering all the evidence presented at trial, we conclude that the amount of
damages awarded by the jury is not so against the great weight and preponderance of the evidence
as to be clearly wrong or manifestly unjust.

 In their seventh cross-issue, Defendants assert that Starlight knew there were
material defects in the property before closing and, therefore, any representation Xarin made that
there were no material defects, or any failure to disclose the existence of material defects, could
not have been a producing or proximate cause of damages to Starlight. Defendants point to
evidence of a variety of problems of which Starlight was aware. It is true that one's knowledge
or investigation revealing a representation to be false may preclude claims of reliance or causation
of damages from the representation. See Chitsey v. National Lloyd's Ins. Co., 698 S.W.2d 766,
769 (Tex. App.--Austin 1985), aff'd, 738 S.W.2d 641 (Tex. 1987). However, we reject the
argument that when a broad or multi-part representation is made, knowledge of the falsity of any
part of the representation necessarily precludes detrimental reliance on other parts of the
representation.

 Defendants point out that, before closing, Starlight had a copy of a report that
disclosed the existence of problems with the roof and the HVAC. However, Starlight's owner, 
Hardin, testified at trial that, while he knew there were some problems with the roof and HVAC,
he did not know the extent of the problems or that the problems constituted "material defects." 
We conclude that Hardin's knowledge of some problems with the roof and HVAC does not
preclude, as a matter of law, either reliance on or causation of damages by the no-material-defect
representation and failure to disclose by Defendants.

 In their eighth cross-issue, Defendants assert that the trial court erred in overruling
Xarin's objection to the form of the damages question dealing with HDR Engineering because the
question failed to segregate the amount of HDR's claim that was caused by Xarin from the amount
of the claim that was caused by Starlight. Defendants assert that a settlement agreement between
HDR and Starlight deals with disputed claims between HDR and Xarin as well as between HDR
and Starlight.

 HDR was a tenant at the Plaza under both Xarin and Starlight. Starlight claimed
that HDR's lease expired on August 31, 1994, but that HDR did not leave the space until October
15, 1994. Starlight and HDR disputed the amount due for the holdover period. In addition,
Starlight asserted claims against HDR for expense adjustments owed under the terms of its lease,
including amounts which accrued while Xarin owned the Plaza. HDR had claims against Starlight
for damages incurred while a tenant at the Plaza due to the lack of repair and maintenance to the
roof. The parties agreed that HDR would pay Starlight $15,000 in satisfaction of debts claimed
by Starlight and HDR would release Starlight for any claims by HDR.

 The jury was asked what sum of money would fairly and reasonably compensate
Starlight for the claim HDR made against it. The jury answered $47,262.83. Xarin asserts that
the amount of expense adjustments that occurred when Xarin owned the Plaza should have been
segregated out of the calculation. However, pursuant to the real estate lien note, Starlight owned
the right to all accounts receivable such as the expense adjustments that accrued while Xarin
owned the Plaza. We conclude that the court did not err in overruling Xarin's objection to the
form of this question. The amount of expense adjustment claims that occurred when Xarin owned
the Plaza did not need to be segregated out of the calculation.

 In their ninth cross-issue, Defendants assert that the trial court abused its discretion
in admitting evidence concerning asbestos because the evidence had no probative value and it was
inflammatory and highly prejudicial. See Tex. R. Evid. 403, 404(b). Although Starlight did not
seek damages from the alleged failure of Defendants to inform Starlight of the presence of asbestos
in the Plaza, the trial court stated that it was admitting evidence of asbestos because it was relevant
to questions of knowledge of material defects and of failing to disclose matters that should have
been disclosed. We conclude the trial court did not abuse its discretion in admitting the evidence
concerning asbestos.

 In their tenth cross-issue, Defendants assert that the evidence was legally and
factually insufficient to support the jury's answers to the questions pertaining to liability for
common-law fraud, statutory fraud, DTPA, breach of contract, breach of warranty and
unconscionability because Starlight failed to prove that Xarin, Baxter, or Ablin knew about any
material defects in the roof or HVAC. A business organization becomes aware of information
through the knowledge of its agents and officers. See Wellington Oil Co. v. Maffi, 150 S.W.2d
60, 63 (Tex. 1941); Hirsch v. Texas Lawyers' Ins. Exch., 808 S.W.2d 561, 563 (Tex. App.--El
Paso 1991, writ denied). There appears to be no dispute that in managing the Plaza for Xarin,
HPM was acting as Xarin's agent and that it was aware of the roof and HVAC problems. To the
degree that there is evidence that Baxter was aware of the problems as well, such knowledge may
be imputed to Xarin.

 Defendants do not argue that HPM had no knowledge of any material defects in the
roof or HVAC. Indeed, there was evidence that HPM received numerous complaints about both
items. Eddie Hayden of HPM testified that he had discussions with Baxter about the roof
problems and that he probably told Baxter about the complaints regarding the HVAC. Baxter
testified that, although he did not remember if he was told of the complaints about the HVAC,
Hayden may have told him. Baxter testified that he had been told of roof problems. Hayden
wrote letters to Baxter about the roof leaks. Blin testified that he communicated with Baxter
frequently and that he had discussed the roof and HVAC to some degree with Baxter when
considering whether to sell the Plaza. Hayden testified that he told Baxter about the Health
Department's investigation of the air quality, in that the Department's air quality surveys were
being circulated among the tenants. Ablin testified that, before closing, he was aware of the
Department of Health investigation. We conclude that the record contains more than a scintilla
of evidence that Xarin, Baxter, and Ablin knew of material defects in the roof and HVAC.

 Defendants argue that all they knew about the roof leaks was that the roof would
leak, would be patched, would not leak for a while, but then later would begin to leak again. 
Defendants assert that the roof did not leak in the six months prior to closing. Defendants also
assert that the only air-quality problem in the building involved the presence of a smoking area on
the second floor of the building, which was closed after complaints. Having reviewed all the
evidence, however, we conclude that the evidence supporting the jury's findings is not so weak,
nor so against the great weight and preponderance of the evidence, as to be manifestly unjust.

 Defendants also assert that there is no evidence that they acted unconscionably in
their dealings with Starlight. (6) They argue that to demonstrate unconscionability, there must be
evidence that Defendants took advantage of Starlight's lack of knowledge or experience, and that
their behavior was glaringly flagrant. See Tex. Bus. & Com. Code Ann. § 17.45(5) (West 1987
& Supp. 1998); State Farm Lloyds v. Nicolau, 951 S.W.2d 444, 451 (Tex. 1997). Defendants
point out that Starlight was a sophisticated party that knew about problems with the building. 
Even assuming Defendants did not act unconscionably here, however, the damages granted by the
jury for the DTPA claims are nonetheless supported by another jury finding: that Defendants
engaged in a false, misleading, or deceptive act or practice that was a producing cause of damages
to Starlight. See Tex. Bus. & Com. Code Ann. § 17.50(a) (West Supp. 1998) (listing four
alternative ways of demonstrating violation of DTPA).


CONCLUSION

 We affirm the portion of the trial court's judgment denying Xarin recovery on its
counterclaim; we also affirm the portion of the trial court's judgment pertaining to Starlight's
settlement agreement with HDR Engineering.

 We reverse the portion of the judgment ordering that Starlight take nothing on its
claim for damages to the roof and HVAC, and we render judgment that Starlight recover from
Defendants Xarin, Baxter, Ablin, and HPM $54,677.12 in actual damages to the roof and
$103,500 in actual damages to the HVAC as found by the jury. We also render judgment that
Starlight recover the exemplary damages found by the jury as follows: $22,500 from Xarin and
$200,000 from Ablin. We also render judgment that Starlight recover additional damages for the
DTPA violations as follows: $5,000 from Baxter and $2,420 from Xarin.

 We further render judgment that Starlight recover from Defendants its attorney's
fees consistent with these trial-court findings of fact: $160,294 for attorney's fees through trial,
$20,000 for this appeal, and $7,500 for making or responding to a petition for review by the Texas
Supreme Court and $3,000 if the petition is granted. The attorney's fees are contingent on
Starlight's success. We also render judgment that Starlight recover the following expert-witness
fees as found by the trial court in its findings of fact: $8,644.57 for Thomas Alexander and
$1,358.75 for David Lawrence.

 We affirm the trial-court judgment in all other respects.



 

 J. Woodfin Jones, Justice

Before Chief Justice Yeakel, Justices Aboussie and Jones

Affirmed in Part; Reversed and Rendered in Part

Filed: September 24, 1998

Do Not Publish

1. See Tex. Bus. & Com. Code Ann. §§ 17.01-17.854 (West 1987 & Supp. 1998).
2. Starlight also argued that Xarin waived any objection concerning the time at which damages
were measured in the jury questions because Xarin did not object to the question submitted and
tender a proposed instruction in substantially correct form. The test for determining whether a
party has preserved error in the jury charge is whether the party has made the trial court aware
of the complaint, timely and plainly, and obtained a ruling. State Dep't of Highways & Pub.
Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 1992). Even assuming proper objection, however,
we have concluded that the court erred in granting the motion for JNOV.
3. Starlight did not pursue a common-law fraud claim against Ablin.
4. Jury question five asked:


"Did George Ablin commit statutory fraud against Starlight, L.P. relating to the roof
or the HVAC system? In answering this question, you are instructed that statutory
fraud occurs when:


1. a person has actual awareness of the falsity of a representation made by
another person, and


2. fails to disclose the falsity of the representation to the person defrauded,
and


3. benefits from the false representation.
5. Defendants also argue that any affirmative representations by HPM were mere "puffing" that
is not actionable as a deceptive trade practice. See Prudential, 896 S.W.2d at 163. We need not
address this second argument because we have already concluded under Defendants second cross-issue that HPM's DTPA liability may be based only on its failure to disclose material facts.
6. Jury question twelve asked if any of the defendants (Baxter, Xarin, HPM, or Ablin) engaged
in "any unconscionable action or course of action that was a producing cause of damages to
Starlight, L.P." The jury answered "yes" as to each.


; Supp. 1998); State Farm Lloyds v. Nicolau, 951 S.W.2d 444, 451 (Tex. 1997). Defendants
point out that Starlight was a sophisticated party that knew about problems with the building. 
Even assuming Defendants did not act unconscionably here, however, the damages granted by the
jury for the DTPA claims are nonetheless supported by another jury finding: that Defendants
engaged in a false, misleading, or deceptive act or practice that was a producing cause of damages
to Starlight. See Tex. Bus. & Com. Code Ann. § 17.50(a) (West Supp. 1998) (listing four
alternative ways of demonstrating violation of DTPA).


CONCLUSION

 We affirm the portion of the trial court's judgment denying Xarin recovery on its
counterclaim; we also affirm the portion of the trial court's judgment pertaining to Starlight's
settlement agreement with HDR Engineering.

 We reverse the portion of the judgment ordering that Starlight take nothing on its
claim for damages to the roof and HVAC, and we render judgment that Starlight recover from
Defendants Xarin, Baxter, Ablin, and HPM $54,677.12 in actual damages to the roof and
$103,500 in actual damages to the HVAC as found b